McFarland, J.,
delivered the opinion of the Court.
This action was brought by Cross to recover one thousand dollars, alleged to have been deposited with the defendant, a corporation doing a banking business. Verdict and judgment were rendered for the plaintiff, and appeal in error by the defendant to this Court.
The facts, as the plaintiff insists, are, that on or about the 17th of November, 1864, he presented a check upon the defendant, at his counter in Memphis, and at his request, the officer who was acting as teller, paid him part of the check, leaving, a balance of one thousand dollars, which he, the teller, agreed to enter 'to his credit on the books of the bank — and thereupon the check was surrendered to the officer aforesaid. That he, the plaintiff, had no account with the bank, did not know the officer at the counter with whom he conducted the transaction, nor did he know any one then in the bank — although he knew the President and Cashier, who were not then present. The plaintiff resided' in Arkansas, had shortly before sold a lot -of cotton, and received the check in payment, but owing to the country being infested with robbers, did not desire to take all the money .with him. He made uo deposit ticket, nor was any certificate of deposit passed back, or other evidence given him of the deposit. Nor did he leave his signature with the officer aforesaid. . He was not at the time informed these precautions were necessary. He thinks the officer took down his name on a small piece of white paper. When called on afterward, the books of the bank fur-aiishing no evidence of the deposit, payment was refused.
*285 This transaction was manifestly unusual, and' not in accordance with the usages of bankers and businessmen. But the record seems to make it probable that the following is the real state of facts:
. Cross sold his cotton to D. W. Warner and received from him a check drawn by S. Kremer & Co. on the defendant for $1,297.66. To whom, or whose order, this check was made payable, is not clear — but it was most probably payable either to bearer or the order of Warner. This check was, on the 17th of November, 1864, presented by Cross to the bank, and $297.60 paid upon it — leaving a balance of one thousand dollars — and this one thousand dollars was, by mistake^ entered to the credit of Warner. It is at least made-certain that a check of this description was on the-16th of November, 1864, drawn by L. Kremer & Co., passed by them to Warner, and by Warner to Cross. This check was returned by the bank to Kremer & Co. as paid — and the books of the bank show that it was paid on the 17th of November, 1864 — and on that day the books of the bank show that $1,000 was-'entered to the credit of D. W. Warner. That this $1,000, so entered to the credit of Warner, was the-balance of this check due Cross, is not certain; but as we have said, made highly probable from the circumstances. The evidence of the officers of the bank is in substance to the effect, that it was the universal custom not only of this bank, but of all others, in receiving deposits, to require the depositor to make a “deposit ticket,” or that the same should be made for him by some officer of the bank, or to give a certifi *286 cate of deposit, or furnish the depositor with a “pass book,” with the amount entered to his credit, and also to take down his signature in a book kept for the purpose. They do not profess to have any personal .knowledge of this transaction. They detail the manner of book-keeping, and show that a deposit of this sum, without observing these rules and entering the sum on the books, would show an error in the cash account to this amount; and also they prove that no such error appeared on the cash book.
Propositions were submitted by the defendant’s counsel which the court refused to give. 1st. The court was asked in substance, to instruct the jury as a matter of law, that upon making the deposit it was the duty of the plaintiff to observe the rules before referred to, in regard to making deposit tickets, or taking certificates of deposit — or pass-book and leaving his name, etc. — and if the plaintiff failed to observe these regulations, it was gross negligence upon his part; and if by reason of this, the money was placed to the credit of some other person, and lost to the bank— that the plaintiff could not recover. Or in the- 2d' place, if the plaintiff was not bound to follow these regulations in regard to making deposits, as a matter of law; yet if such was the well-established custom of banks, then in making this deposit it was the duly of the plaintiff, as well as the' teller of the bank, to have made it in this manner, and in failing to do so, the plaintiff was guilty of gross negligence, and if by reason thereof, the credit was erroneously entered to another party, and lost, then the bank was not re *287 sponsible, although to some extent it occurred from the negligence of the teller.
The argument, as we understand it, is, that the regulations before referred to in regard to making deposits, are to be allowed either the effect of positive law, or well established custom and usage, and the bank cannot be bound for a deposit in any other way, unless it be shown that they actually have the money. If the money is delivered to an officer of the bank without observing these regulations, the bank officer takes the . money as the agent of the owner, and the bank is not bound for the deposit.
We are not inclined to assent to the correctness of this argument. It is true that in some instances a corporation can only act in the mode prescribed b.y law. It is also true that for some purposes it is important to ascertain the rules, regulations, and bylaws of the corporation. Yet it must be borne in mind that these are, in many respects, but intended to direct the action and conduct of its own officers, and it does not follow that a failure of its own officer to observe any one of these regulations absolves the bank from all liability. The bank must be held liable for the just responsibility of its acts as an individual is held liable; observing the difference, of course, as to the manner in which a corporation acts.
The Circuit Judge told the jury that all that was -necessary to constitute a legal deposit of money in a bank, is for the person wishing to make the deposit to hand what he wishes to deposit to the party in the bank ostensibly clothed with authority to receive *288 the same, at the place in the bank where deposits are usually received, and to request that the same be placed to his credit; and that the thing deposited should be received upon these terms, and when so received the bank is responsible for its return.”
We think this is a clear, accurate, and almost self-evident proposition of law. The proposition that the bank should be allowed to make the failure of its own officer to observe its own rules, and furnish the depositor with the proper evidence of the deposit, a reason for avoiding responsibility, can not, we think, be for a moment entertained. The officer is authorized to receive money on deposit. After he receives it he may, wilfully or negligently, fail to give the usual vouchers .or make the usual entry. But after the actual receipt of the money, the failure of the officer to observe these regulations and provide these evidences of the transaction, can not be allowed to absolve the bank from liability. These regulations are very important as matters of evidence, but if the fact can be satisfactorily established otherwise, the same legal result .must follow.
The argument for the bank seems to assume that the failure of duty is the fault only of the depositor, and that the bank officer is excusable. He certainly had it in his power to have protected the bank from the consequences resulting from a failure to observe its rules. He was not compelled to accept the deposit, but when he did so the bank is responsible. In case the depositor should give a wrong name, or in any other manner mislead the officer of the bank, *289 he would of course have to abide the result of his acts.
The conduct of the plaintiff in this case was certainly very incautious and negligent, but the consequences of this would seem to be more against himself than any one else. This was not the necessary cause of the mistake in entering the credit to the wrong name, if this was done. If the teller received the money and assumed the responsibility of seeing it entered to the credit of the owner, he would be bound to do so. If he incautiously assumed that Warner, or some else was the owner, when, upon proper inquiry, if he did not know, the real name would have been disclosed; the bank, can not escape the consequences. We can not see how the mistake of the bank in paying this money to Warner, if they did so, can, in a legal sense, be chargeable to the negligence of the plaintiff. The fact that banks usually act in a certain way, does not establish that they can not contract in any other mode.
The authorities referred, to upon the subject of negligence refer mainly to actions of tort. This is-an action upon a contract, and the question is, Was the contract entered into? It is true the usual evidences of the transaction are wanting, yet if the fact can' be established by other convincing evidence, it will be sufficient. It is argued that tiny consequence of this holding' will be to allow any man, who may be corrupt enough to do so, to charge ‘a bank for deposits without any evidence but his own oath to sup *290 port it. It is not probable that a court and jury could be induced to give credit to unjust claims of this sort against the evidence that could be furnished by the officers and books of a bank. In this case the testimony of Cross is fully, corroborated in many important particulars by the bank books, and other ^satisfactory evidence, and the jury have credited his testimony, and, we think, not without good reason. We think the real facts are as we have already stated. The charge was, we think, very clear and fair to the defendant. The jury were told that the usages of the bank were proper to be considered as evidence, going to show that no deposit was made. The presumption was that these customs were always observed, and the burden was. upon the plaintiff to overcome this presumption by clear evidence.
It is objected that evidence was admitted of the declaration of Myers, an officer of the bank, not admissible under the rules in such cases; that the evidence was afterward excluded, again admitted, and then finally excluded, and that this was error. If proper to decide it, it might be a very doubtful question whether or not the testimony was not competent; but in a case like this, when the error, if it was one, was corrected by the court below, and the jury told to disregard the evidence, we must presume that they did so. It is always desirable that illegal evidence should not be heard by the jury at all, but in nisi prius trials this cannot always be ayoided; but its.' mere admission, when afterward excluded, cannot be *291 regarded as a ground for new trial in all cases. In a case where testimony of an inffaraatory character, calculated to inflame the prejudices- of a jury, has been once admitted, the effect of it' is not always' removed by the court excluding the evidence afterward. And in cases of that character it . may sometimes be proper to grant new trials upon this ground, but no general rule upon this subject can be prescribed, except that in a case like this it is . not positive error. The action of the court in permitting Cross to correct his testimony after the argument of the cause had commenced, was an exercise of discretion, and was certainly not erroneous. If does not appear that the defendant was, by this, misled as to his defense, or deprived of any evidence.
The argument that no recovery can be had in this case because Cross shows that he once drew a check for this sum, which check is not accounted for, is wholly untenable. This check cannot prejudice the defendant. It is well settled that no action can be maintained upon a check against the drawer without acceptance.
We are of opinion that there is no error in the record, and affirm the judgment. '